UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

MUSASHI AZ LLC,

    Plaintiff,

v.

MARINEMAX EAST, INC.,

    Defendants.

_____/

**COMPLAINT**

COMES NOW Plaintiff, MUSASHI AZ LLC ("Plaintiff" or "Musashi"), by and through its undersigned attorneys and files this, its Complaint for damages against Defendant MARINEMAX EAST, INC., ("MarineMax") and in support thereof states as follows:

**JURISDICTION AND VENUE**

1. This is an action for monetary damages arising from a vessel fire.

2. This is an action for damages in excess of $75,000.00 excluding attorney fees and costs and is within this Court's subject matter jurisdiction pursuant to 28 USC §1332, as the parties are citizens of different states and countries and the amount in controversy exceeds the sum of value of $75,000.00 exclusive of interest, attorney fees and costs.

3. Venue is proper within the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because the vessel's home port was within the Southern District, the loss occurred in the Southern District, and the events or omissions giving rise to the claim occurred in this district.

4. All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been complied with.

## PARTIES

5. At all times material to this action, Plaintiff is and was a limited liability company organized under the laws of the State of Delaware.

6. The sole member of the Plaintiff limited liability company is a citizen of Venezuela residing in Miami, Florida under an E-2 visa.

7. The Plaintiff limited liability company's sole asset is a 2021 47' Azimut Verve, with hull identification number, XAX47026F122 (the subject vessel).

8. At all times material to this action, Defendant MarineMax, is a Florida for Profit Corporation with its principal place of business in Clearwater, Florida 33753.

## FACTUAL ALLEGATIONS

9. Musashi purchased the Vessel from Defendant MarineMax in Miami, Florida on August 27, 2021 for $1,575,000.00.

10. The Vessel was a new vessel when purchased from MarineMax and is a consumer product as defined by 15 U.S.C. § 2301.

11. The vessel's manufacturer, Azimut S.p.A., provides a three-year "Peace of Mind" structural limited warranty for the Vessel which went into effect on or about August 27, 2021.

12. MarineMax was an authorized dealer for Azimut S.p.A. and an authorized warranty repair facility.

13. Upon information and belief MarineMax provides warranty repairs for Azimut vessels under a contractual agreement with Azimut S.p.A.

14. Plaintiff and other similarly situated vessel owners are the intended beneficiaries of the agreement between MarineMax and Azimut S.p.A. for warranty repairs to Azimut vessels including the subject vessel.

15. MarineMax holds itself out to the public as having highly skilled technicians, factory-trained mechanics, and experienced journeymen of all disciplines who can perform any project from simple repairs to a complete re-fit on time and within budget.

16. Following purchase, Musashi brought the Vessel back to MarineMax for authorized warranty repairs in or about November 2021.

17. After a month and half, MarineMax advised Musashi the repairs were complete.

18. When receiving the Vessel, Musashi noticed that not all the authorized warranty repairs were completed and arranged for MarineMax to complete the work.

19. Musashi brought the Vessel to MarineMax in March 2022, providing a list of twelve outstanding items.

20. MarineMax kept the Vessel for over two months to complete the warranty repairs.

21. On or about May 2022, Musashi was notified that the repairs were finalized.

22. When Musashi picked up the Vessel, it was discovered that only three items were completed, the Vessel was in overall neglected condition, a half inch of water had collected on the floor of the cabin, and trim in the cockpit area had been removed and was missing.

23. On or about, November 2022, the Vessel was brought to MarineMax for the third time to complete the warranty repairs.

24. From November 2022 through February 18, 2023 (the date of the fire), the unoccupied Vessel remained under the exclusive possession, care, custody, and control of MarineMax.

25. In Nov. 2021, March 2022 and again in November 2022 MarineMax agreed to and undertook to render repairs to the Plaintiff's vessel pursuant to MarineMax's agreement with Azimut S.p.A. to perform warranty services on Azimut vessels.

26. At all times material, the Vessel was left unattended connected to shore power and breakers.

27. On or about February 18, 2023, Plaintiff's Vessel caught fire.

28. There was no fire detection system, fire alarm or fire suppression system at the MarineMax facility.

29. The MarineMax night watchman failed to notice or report the fire.

30. There were no MarineMax employees monitoring the facility electronically.

31. MarineMax did not alert emergency services to the fire.

32. The fire was first reported at 1:46 am by a police officer located across the river from MarineMax, on the South side of Little River.

33. Two additional witnesses in the area reported the emergency as the fire grew.

34. The City of Miami Fire-Rescue Department responded to the fire.

35. When the Fire Department arrived at the MarineMax facility, the responders were initially unable to enter the property due to the locked security gate.

36. No MarineMax employees were present to provide access to the Fire Department.

37. MarineMax did not maintain a Fire Department lockbox on the premises.

38. While the Fire Department remained outside the gate, the fire expanded, spreading throughout the Vessel.

39. Eventually the Fire Department cut through the gate to make entry and extinguish the fire.

40. The Fire Department was further delayed by a lack of designated fire lanes through the MarineMax property and access blocked by boats and equipment.

41. The Vessel sustained extensive fire damage.

42. The Vessel was a constructive total loss as a result of the fire.

43. The loss was fortuitous from the standpoint of the Plaintiff.

44. A reasonably prudent marine facility would have monitored the premises to rapidly notify the fire department in the event of an emergency.

45. A reasonably prudent marine facility would provide the fire department access to the facility in the event of an emergency.

46. A reasonably prudent marine facility would maintain a lockbox on the premises.

47. A reasonably prudent marine facility would alert the fire department to the controlled access of the premises.

48. A reasonably prudent marine facility would maintain unobstructed designated fire lanes to all areas of the premises.

49. A reasonably prudent marine facility would comply with the Florida Fire Prevention Code 69A-60.005 and NFPA 303.

## COUNT I
## NEGLIGENCE PER SE AGAINST DEFENDANT MARINEMAX

50. Plaintiff repeats and re-alleges paragraphs 1-50 above as if fully set forth herein.

51. At all times material, the *7th Edition of the Florida Fire Prevention Code* ("FFPC") was the state code for fire prevention standards in the State of Florida and adopted by the State Fire Marshal as required by Florida Statute 633.202.

52. The FFPC applies Fire Protections Standards to Marinas and Boatyards through adoption and incorporation of NFPA 303.

53. In addition the Florida Administrative Code §69.A-3.013 adopts the NFPA 303, 2016 edition, Fire Protection Standards for Marinas and Boatyards.

54. The FFPC and Florida Administrative Code are statutes designed to prevent fires and fire damage.

55. Musashi is a member of the class that the FFPC and Florida Administrative Code are designed to protect from fires and fire damage.

56. MarineMax, as a marina and boatyard facility, was required to comply with the statutory requirements of the FFPC and NFPA 303 as adopted by the Florida Administrative Code §69.A-3.013.

57. Fire Department Access to Marinas and Boatyards is required by NFPA 303-16, Section 4.2.6.

58. NFPA 303-16, Section 4.2.6.1 states, "The fire department shall have access to fenced, gated, or locked grounds of piers."

59. MarineMax failed to provide access to the fenced, gated, and locked grounds of the boatyard, delaying the Fire Department from entering the premises until the firefighters forced entry by cutting through the gate.

60. MarineMax failed to maintain designated fire lanes and unimpeded access to all areas of the facility, with portions of the premises blocked by boats and equipment, further limiting the ability of the Fire Department to reach the fire.

61. NFPA 303-16, Section 4.2.6.2 states, "Appropriate means of access such as keys, cardkeys, or combinations shall be provided to the fire department or shall be permitted to be secured in a lockbox on the premises accessible to the fire department."

62. MarineMax failed to provide keys, cardkeys, or lock combinations, to the Fire Department and failed to maintain a lockbox on the premises, preventing the Fire Department from entering the grounds until cutting through the gate.

63. NFPA 303-16, Section 4.2.6.3 states, "The fire department shall be notified immediately of any changes in the means of access."

64. MarineMax failed to provide notice to the Fire Department of the gated premises.

65. Due to the failure of MarineMax to comply with the requirements of FPPC and NFPA 303, the Fire Department was prevented from extinguishing the fire which occurred onboard the Plaintiff's vessel while in the incipient stages.

66. Due to the failure of MarineMax to comply with the requirements of FPPC and NFPA 303, the fire which occurred onboard the Plaintiff's vessel could not be extinguished and spread, causing a constructive total loss of the Vessel.

67. NFPA 303-16, Section 4.2 governs Inspection, Testing, and Maintenance of Fire-Fighting Equipment and Fire Protection Systems for Marinas and Boatyards.

68. NFPA 303-16, Section 4.2.1 "requires that all fire-fighting equipment and fire protection systems be inspected, tested and maintained at regular intervals in accordance with the manufacturers' instructions and the applicable NFPA standards." The NFPA 10-13 Standard for Portable Fire Extinguishers Section 7.2.4.1.1 Manual Inspection Records requires, "Where manual inspections are conducted, records for manual inspections shall be kept on a tag or label attached to the fire extinguisher, on an inspection checklist maintained on file, or by electronic method."

69. The portable fire extinguishers maintained by MarineMax on the dock nearest the Vessel contained unreadable inspection tags due to extreme weathering.

70. The failure of MarineMax to maintain fire-fighting is in violation of NFPA 303-16, Section 4.2.1, and NFPA 10-13, Section 7.2.4.1.

71. NFPA 303-16, Section 4.2.1.1 "requires that all fire extinguishers be inspected, tested, and maintained in accordance with NFPA 10." The NFPA 10-13 Standard for Portable Fire Extinguishers, Section 7.2.2 Inspection Frequency designates "Fire extinguishers and Class D extinguishing agents shall be inspected either manually or by means of an electronic monitoring device/system at intervals not exceeding 31 days."

72. The tamper seals on the portable fire extinguishers displayed a maintenance date of 2021, which is at least one year past the NFPA 10 required maintenance date at the time of the fire on February 18, 2023.

73. The failure of MarineMax to inspect, test, and maintain the facility's fire-fighting equipment is in violation of NFPA 303-16, Section 4.2.1.1.

74. NFPA 10-13 Standard for Portable Fire Extinguishers, Section 6.1.3.3 governs Visual Obstructions for Portable Fire Extinguishers.

75. NFPA 10-13, Section 6.1.3.3.1 states "Fire Extinguishers shall not be obstructed or obscured from view."

76. MarineMax stored the portable fire extinguishers in unmarked cabinets which were indistinguishable from nearby shore-power pedestals, containing a weathered opaque door which concealed the fire extinguisher from view, in violation of NFPA 10-13, Section 6.1.3.3.1.

77. Due to the failure of MarineMax to comply with the statutory requirements of FFPC and NFPA, Plaintiff's Vessel sustained fire damage which could not be extinguished prior to the vessel being rendered a constructive total loss.

78. Due to the failure of MarineMax to comply with the statutory requirements of FFPC and NFPA, the fire would have been extinguished during the incipient stage without rendering the boat a constructive total loss.

79. Plaintiff has been damaged in the amount of $1,575,000.00.

WHEREFORE, the Plaintiff demands judgment against the Defendant MarineMax, for actual, consequential, compensatory, and incidental damages, prejudgment interest, and for costs; and for such other and further relief that this Honorable Court deems just and proper.

## COUNT II
### BREACH OF BAILMENT AGAINST DEFENDANT MARINEMAX

80. Plaintiff repeats and re-alleges paragraphs 1-50 above as if fully set forth herein.

81. On or about, November 2022, Plaintiff delivered the Vessel to MarineMax to receive repairs.

82. MarineMax accepted the Vessel and stored it at the Marine Max repair facility.

83. For several months, MarineMax retained exclusive possession, custody, care, and control of the Vessel.

84. At all times relevant, Plaintiff was the bailor for compensation of the Vessel.

85. At all times relevant, MarineMax was the bailee of Plaintiff's Vessel.

86. As bailee, MarineMax owed a duty of care to protect the Vessel and return it to Plaintiff after the repairs were completed.

87. While secured to the dock and undergoing repairs, MarineMax connected the unoccupied Vessel to shore electrical power.

88. While in the care of MarineMax, Plaintiff's Vessel caught fire on or about February 18, 2023.

89. The Vessel remained attached to shore electrical power during and after the fire.

90. The MarineMax night watchman patrolling the property did not notice the fire and took no action.

91. MarineMax did not have a live fire watch or remote alert system to monitor its property.

92. MarineMax did not provide the Fire Department access to its property.

93. The fire spread as the Fire Department could not enter the premises.

94. The fire caused extensive damage to the Vessel.

95. The Vessel was a constructive total loss as a result of the fire.

96. The Vessel could not be returned to Plaintiff because of its condition.

97. Plaintiff has been damaged in the amount of $1,575,000.00.

WHEREFORE, the Plaintiff demands judgment against the Defendant MarineMax, for actual, consequential, compensatory, and incidental damages, prejudgment interest, and for costs; and for such other and further relief that this Honorable Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by Jury.

Dated this 31st day of October 2024.

Respectfully submitted,

By:/s Christopher R. Fertig
CHRISTOPHER R. FERTIG, ESQ.
Florida Bar No.: 218421
chris.fertig@fertig.com
FERTIG & GRAMLING
200 S.E. 13th Street
Fort Lauderdale, FL 33316
Telephone: 954-763-5020
Facsimile: 954-763-5412
*Counsel for Plaintiff*